### 61872. MILLINE et al. v. AMERICAN CAN COMPANY.

BANKE, Judge.

While walking across the premises of appellee American Can Company, appellant Charles Milline was struck by a truck being driven by John H. Parker. He and his wife each filed a personal injury action in the Superior Court of DeKalb County, naming Parker and American Can as joint defendants. Parker was accused of operating the truck in a negligent manner and American Can of violating its duty to keep its premises safe for business invitees.

American Can moved to be dismissed from the two DeKalb actions on the grounds of lack of jurisdiction and venue. Before any ruling on these motions was issued, the Millines voluntarily dismissed the company from the suits without prejudice and filed another action against it in Fulton County. They later entered into a covenant not to sue with Parker's insurer, Allstate Insurance Company, settling the claim against him without his consent. American Can moved for summary judgment in the Fulton County action, contending that under Code Ann. § 56-408.1 (Ga. L. 1963, p. 643) the covenant not to sue operated as a general release by the Millines of all claims arising out of the accident. The trial court granted the motion, and this appeal followed. *Held:*

Normally, "a mere covenant not to sue one joint tortfeasor, or an instrument that may be construed as such, does not discharge the remaining tortfeasors. *Moore v. Smith,* 78 Ga. App. 49 (50 SE2d 219)." *Weems v. Freeman,* 234 Ga. 575, 576 (216 SE2d 774) (1975). There is no question that the instrument executed by the Millines in favor of Allstate was intended to operate as a covenant not to sue rather than as a release, for not only is it designated as such, it contains the following language: "All other language in this instrument notwithstanding, it is the intent of the undersigned to

discharge the above-named covenantees and not others. This instrument shall be interpreted as a convenant not to sue."

Code Ann. § 56-408.1 is entitled "Effect of provision in policy permitting insurer to settle or compromise claims" and provides as follows: "Any provision in a liability policy of insurance which provides that the insurer shall have the right to compromise or settle claims of third persons against the insured without the consent of the insured shall be deemed to create, as between the insurer and the insured, the relationship of an independent contractor so that the insured shall not be precluded from asserting a claim or cause of action against third persons, notwithstanding the settlement by the insurer of such claims of third persons, unless the insured shall previously have consented thereto in writing: Provided that in all such cases where the insurer shall settle the claims of third persons against the insured, without such written consent, it shall be the duty of the insurer to inform such third persons in writing of the lack of consent of the insured and that the insured is not thereby precluded from the further assertion of claims against such third persons, before taking from such third persons any release, covenant not to sue, or other settlement; and upon the failure of the insurer to give such notice to such third persons of the lack of consent of such insured, such release, covenant not to sue or other settlement shall be of no effect, null and void. If such third persons execute a release, covenant not to sue, or other instrument in settlement of their claims after such notice of the lack of consent of the insured, the same shall be deemed and construed as a bar to the further assertion by such third persons of such claims against all persons whomsoever, and such third persons shall not plead such release, covenant not to sue or settlement in bar of any action or claim asserted by such insured."

The statute was enacted less than three months after the Supreme Court decided *Aetna Cas. &c. Co. v. Brooks,* 218 Ga. 593 (129 SE2d 798) (1963), holding that where an automobile liability insurer settled a claim against its insured pursuant to a policy provision authorizing such action, the settlement was binding on the insured whether or not he consented to it. The obvious purpose of the statute was to nullify the effect of the *Aetna* holding, while protecting the rights of third persons entering into such settlements without notice of the insured's lack of consent. However, the last sentence is susceptible of an interpretation which gives the statute an additional, more drastic effect. It provides that any settlement instrument, including a covenant not to sue, which is executed upon proper notice of the insured's lack of consent "shall be deemed and construed as a bar to the further assertion by such third persons of such claims *against all persons whomsoever . . .* "(Emphasis supplied.) In *Jackson*

*v. Kight,* 117 Ga. App. 385, 387 (2) (160 SE2d 668) (1968), this court described this language as "unambiguous" and held that the bar to further assertion of "such claims" applied to all claims arising out of the accident. This holding was followed in *Fillingame v. Cook,* 119 Ga. App. 140 (166 SE2d 440) (1969), and in *Fisher v. Pirtle,* 119 Ga. App. 556 (617 SE2d 613) (1969). It has also been cited with approval in *Watson v. Hamil,* 122 Ga. App. 120, 122 (176 SE2d 276) (1970), and *Spearman v. Southeastern Hwy. Contracting Co.,* 125 Ga. App. 85, 86 (186 SE2d 484) (1971).

The conclusion that the statutory language in question is "unambiguous" must be recognized as mistaken. The term "such claims" can easily be interpreted as referring only to the claims which were the subject of the settlement with the insurer. Not only does such an interpretation arise naturally from the language of the statute, it is in harmony with the limited, remedial purpose of the legislation. There is simply no basis for attributing to the Legislature an intention to prohibit plaintiffs from settling with the insurer of one tortfeasor while retaining the right to sue other tortfeasors. We accordingly overrule *Jackson v. Kight,* supra, and its progeny, and we reverse the grant of summary judgment to the appellee in this case.

*Judgment reversed. Quillian, C. J., McMurray, P. J., Shulman, P. J., Birdsong, Carley and Pope, JJ., concur. Quillian, C. J., Shulman, P. J., Birdsong, and Carley, JJ., also concur specially. Deen, P. J., and Sognier, J., dissent.*

DECIDED DECEMBER 1, 1981 —
REHEARING DENIED DECEMBER 17, 1981.

*Robert A. Elsner, Garett A. Backman,* for appellants.
*Robert R. Potter, Douglas A. Bennett,* for appellee.

BIRDSONG, Judge, concurring specially.

I concur with the majority. Should we conclude, as the dissent does, that a covenant to the insurer not to sue in settlement of a claim by a third party claimant in the face of non-consent by the insured precludes further suit upon all related claims and thus that all related claims have been settled by this covenant, then I conceive that we are giving to the statute (Code Ann. § 56-408.1) a broader meaning than was intended and will wreak havoc on the process of settling claims without the necessity of suit.

As construed by the dissent, Code Ann. § 56-408.1 provides if the insurer fails to give notice to third parties of its insured's non-consent to the covenant not to sue, then the settlement is null and void as to

the insured; however, if the proper notice is given, then the covenant not to sue becomes a bar against all other claims. Though this may afford ample protection to an insured, I cannot believe that it was the intent of the legislature totally to foreclose the third party who is aware that the insured has not agreed to the covenant not to sue is thereafter barred from pursuing his claim against any other involved tortfeasor. Under such a construction, Code Ann. § 56-408.1 becomes a "Catch-22."

In my opinion, the code section was enacted to encourage settlement in lawsuits. To hold as the dissent contends would tend to discourage and thus to prevent settlements with chaotic effect. In relation to a third party who executes a covenant not to sue in face of the insured's non-consent, I conclude as the majority has held: "The terms 'such claims' can easily be interpreted as referring only to the claims which were the subject of the settlement with the insurer."

I am authorized to state that Chief Judge Quillian, Presiding Judge Shulman, and Judge Carley join in this special concurrence.

DEEN, Presiding Judge, dissenting.

The majority proposes to overrule five cases of the Court of Appeals. Judges Banke and Carley stated in *Holmes v. Worthey,* 159 Ga. App. 262 (282 SE2d 919) (1981) the following: "However, I can neither agree with nor endorse the broad and sweeping language of the majority opinion and I cannot concur in the wholesale overruling of so many cases forming a part of the evolution of substantive law in this area." Their expressions are timely and applicable as to overruling of other decisions in this case.

The case of *Jackson v. Kight,* 117 Ga. App. 385, 387 (2) (160 SE2d 668) (1968), followed by four other Court of Appeals cases, referring to the creation of Ga. Laws 1963, p. 643, Code § 56-408.1, interpreted the language therein used as "unambiguous." The title or caption to this legislation reads in part: ". . . to provide the manner in which third persons shall be barred from asserting *claims* against *all persons whomsoever.*" (Emphasis supplied.) The word "claims" and the words "such claims" were construed and interpreted by Judge Pannell in *Jackson* supra, as unambiguously barring all the plaintiff's *claims* against all persons whomsoever. This case held that while *one* of the purposes of the creation of this new statute was to ameliorate the effect of the decision of the Supreme Court in *Aetna Cas. &c. Co. v. Brooks,* 218 Ga. 593 (129 SE2d 798) (1963), it set forth other objectives and purposes as well.

I respectfully but vehemently disagree with the majority's construction of Code Ann. § 56-408.1 and the application of that statute as so constructed to the facts of this case. It is the "cardinal or

preeminent rule" of statutory construction that this legislative intent be given effect. *Ford Motor Co. v. Abercrombie,* 207 Ga. 464 (1) (62 SE2d 209) (1950).

Regardless of the wisdom of the Legislature in enacting this statute it puts all parties whomsoever on at least constructive if not actual notice as to the consequences if they settle claims with an insurer by release or covenant not to sue where noncompliance of the minimum notice requirement set forth by the statute is not followed in the documents executed.

I am authorized to state that Judge Sognier concurs in this dissent.